IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND J. BLY,                          :

    Plaintiff,                          :

v.                                        :
                           Civil Action No. GLR-18-1333

CIRCUIT COURT FOR HOWARD             :
COUNTY, MD, et al.,

                             :

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Circuit Court for Howard County, MD ("Circuit Court"), Hon. Lenore Gelfman ("Judge Gelfman"), and Wayne A. Robey's ("Clerk Robey") Motion to Dismiss (ECF No. 7) and Plaintiff Raymond J. Bly's Motion to Amend My Complaint and Request Return Papers of Defendants ("Motion to Amend") (ECF No. 14).[1] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set out below, the Court will deny Bly's Motion and grant Defendants' Motion in part and deny it in part.

## I.      BACKGROUND[2]

In 1987, a jury in the Circuit Court for Howard County, Maryland convicted Bly of "criminal charges, including a felony, predicated upon the victim of the alleged crimes

---

[1] Also pending before the Court is Bly's Motion for Leave to Proceed in Forma Pauperis (ECF No. 6). The Court will deny the Motion because, although Bly is on a fixed income, according to the application attached to his Motion, he owns several cars and a house. (Mot. Leave Proceed Forma Pauperis at 1–2, ECF No. 6).

[2] Unless otherwise noted, the Court takes the following facts from Bly's Amended Complaint, (ECF No. 2), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

being a 'child.'" (Am. Compl. at 7, ECF No. 2). Bly "vigorously denied" the charges. (Id.). At some point thereafter, Defendants "J. DOEs 1–N," ("Doe Defendants"), acting with the "authorization" or "acquiescence" of Judge Gelfman or Clerk Robey, "removed the subject [case] records from their customary and appropriate place of storage authorized by the Defendant Court and from their digital place within the data maintained by the Maryland Judiciary," whose public portal is the Maryland Judiciary Case Search. (Id. at 1, 7, 14).

In December 2015, Bly moved for and was denied a new trial. (Id. at 9). In 2016, he attempted to access his case records at the Clerk's Office of the Circuit Court and at its off-site records facility but was told that the records did not exist. (Id. at 11). Bly never received any notice that his records might be sealed. (Id. at 7, 14). The removal of the records interfered with Bly's efforts to "overturn or materially undermine the credibility of" his convictions, to question the integrity of the state courts, and to run for Congress. (Id. ¶¶ 24, 27).

On January 31, 2018, Bly filed suit in this Court seeking to compel personnel from the Circuit Court to release records relating to his criminal convictions for viewing by the public. Compl. at 1, Raymond J. Bly v. Circuit Court for Howard County, MD (Bly I), No. GLR-18-306, (D.Md. dismissed Feb. 7, 2018), ECF No. 1. Construing the complaint in Bly I as a petition for writ of mandamus, the Court denied the petition and closed the case. See Feb. 7, 2018 Order, Bly I, ECF No. 3. In seeking reconsideration, Bly attempted to file an amended complaint, see Am. Compl., Bly I, ECF No. 4, which the

Court directed the Clerk to docket as the Complaint in this action, <u>see</u> Apr. 6, 2018 Order, <u>Bly I</u>, ECF No. 10.

On May 8, 2018, Bly filed an Amended Complaint, alleging violations of his rights to free speech, petitioning, association, access to judicial records, and right against retaliation, all under the First Amendment to the U.S. Constitution; violations of his substantive and procedural due process rights under the Fourteenth Amendment; and the same violations under Articles 24 and 40 of the Maryland Declaration of Rights. (Am. Compl. at 2–5).[3] Bly brings his federal constitutional claims under 42 U.S.C. § 1983. (<u>Id.</u> at 2). Bly seeks declaratory and injunctive relief, as well as money damages. (<u>Id.</u> at 17).

On September 5, 2018, Defendants filed their Motion to Dismiss. (ECF No. 7). On September 28, 2018, Bly filed an Opposition. (ECF No. 13). To date, the Court has no record that Defendants filed a Reply.

On October 24, 2018, Bly filed his Motion to Amend. (ECF No. 14). To date, the Court has no record Defendants filed an Opposition.

## II.    DISCUSSION

### A.    <u>Incorporation and Motion to Amend</u>

The Court first addresses Bly's attempts to amend his Amended Complaint.

---

[3] Bly also alleges that unspecified people who made "comments conveying to prospective counsel the warning that representation of [Bly] would be detrimental to their legal careers and their ability to provide effective representation to their other clients" interfered with his "efforts to obtain legal representation." (Am. Compl. at 4–5, 11–12). Bly does not clearly state the legal basis for this claim nor does he allege it against Defendants. As a result, the Court will grant Defendants' Motion with respect to this claim.

### 1. Incorporation

In his Amended Complaint, the operative pleading, Bly seeks to incorporate, or "adopt[] by reference the entirety of his original and amended complaints filed in" <u>Bly I</u>. (Am. Compl. at 2). While Rule 10 provides that "[a] statement in a pleading may be adopted by reference . . . in any other pleading or motion," Fed.R.Civ.P. 10(c), such incorporation by reference "must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation" and avoid confusion. <u>Hinton v. Trans Union, LLC</u>, 654 F.Supp.2d 440, 446 (E.D.Va. 2009) (quoting 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1326 (3d ed. 2004)), <u>aff'd</u>, 382 F.App'x 256 (4th Cir. 2010). This is especially important when a plaintiff seeks to incorporate entire pleadings into an amended complaint because "an amended pleading ordinarily supersedes the original and renders it of no legal effect." <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 572 (4th Cir. 2001) (quoting <u>Crysen/Montenay Energy Co. v. Shell Oil Co.</u>, 226 F.3d 160, 162 (2d Cir. 2000)). The <u>Hinton</u> court concluded that the "plaintiff's attempts at wholesale incorporations of his prior complaints" were "a misuse of the Rule 10(c) incorporation privilege." <u>Hinton</u>, 654 F.Supp.2d at 447. This Court has also held that a "[p]laintiff may not point to allegations in two separate pleadings in order to state a claim that satisfies the requirements of Rule 8," and that assertions in motion papers have "no effect" on the sufficiency of pleadings. <u>Wroblewski v. United States</u>, No. DKC 08-3368, 2011 WL 1769989, at *4 (D.Md. May 9, 2011). Thus, the Court concludes that Bly's attempt to incorporate pleadings from

another case is a misuse of the incorporation privilege. Accordingly, the Court will not consider allegations in the pleadings in <u>Bly I</u> or in Bly's Opposition in determining whether Bly has stated a claim here.

### 2. Motion to Amend

Bly's one-sentence Motion to Amend simply seeks to identify one Doe Defendant as "Circuit Administrative Judge Laura S Kiessling." (Mot. Am. at 1, ECF No. 14).

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Justice does not require permitting leave to amend when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. <u>See</u> <u>Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos</u>, 264 F.3d 424, 446 (4th Cir. 2001) (citing <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 242 (4th Cir. 1999)). Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. <u>See</u> <u>U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir. 2008).

Bly's Motion neither includes a proposed Second Amended Complaint nor includes any facts about how Judge Kiessling was involved in the alleged removal of his case records. It, therefore, does not state any claim against her and would not survive a motion to dismiss. As a result, the Court will deny Bly's Motion.

**B.** <u>**Motion to Dismiss**</u>

**1.** **Standard of Review**

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of America, N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd sub nom.</u> <u>Goss v. Bank of America, NA</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But "even a pro se complaint must be dismissed if it does not allege 'a plausible claim for relief.'" Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (quoting Iqbal, 556 U.S. at 679). "While pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)).

## 2. Analysis

In their Motion, Defendants argue that Bly fails to state a claim against them and that various immunity doctrines bar his claims. Bly counters that Defendants are not immune and that he has adequately stated his claims. The Court will first examine whether Bly adequately states his claims in the Amended Complaint, and will then turn to Defendants' potential immunities.

### a. Constitutional Claims

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To prevail on a § 1983 claim, a plaintiff must demonstrate a deprivation of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation was committed by a "person" acting under color of state law. 42 U.S.C. § 1983 (2018); West v. Atkins, 487 U.S. 42, 48 (1988) (first citing Parratt v. Taylor, 451 U.S. 527, 535 (1981); and then citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)). "In analyzing a § 1983 claim, a court must first identify 'the specific constitutional right allegedly infringed.'" Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 343 (D.Md. 2011) (citing Albright, 510 U.S. at 271).

### i. Due Process

Bly pleads violations of both his procedural and substantive due process rights. To plead a procedural due process claim under the Fourteenth Amendment, a plaintiff "must

first establish that he had a property or liberty interest at stake." Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002) (citing Stewart v. Bailey, 7 F.3d 384, 392 (4th Cir. 1993)). Here, Bly has not made this threshold showing. Bly's liberty is not at issue, so his only possible interest is one of property. To have a property interest, "a person clearly must have more than an abstract need or desire" or mere "unilateral expectation of it" and instead must have "a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Property interests are not created by the Constitution but rather by "existing rules or understandings that stem from an independent source such as state law." Id. Bly has cited no statute or case that suggests that he has a property interest in the court records of his criminal case, and the Court finds none.[4]

Further, courts have concluded that criminal-defendants-turned-plaintiffs do not have such a property interest. In Braun v. City of New York, the United States District Court for the Southern District of New York concluded that the plaintiff had no "legitimate claim of entitlement to his criminal records or their sealing" under Roth, noting that "the records were government property[,] . . . neither owned nor possessed by the plaintiff." 284 F.Supp.3d 572, 580 (S.D.N.Y. 2018). The same logic applies here. Thus, the Court concludes that Bly fails to state a procedural due process claim.

Substantive due process is a "far narrower concept" than procedural due process, occurring "only where the government's actions in depriving a person of life, liberty, or property are so unjust that no amount of fair procedure can rectify them." Love v.

---

[4] For example, Maryland Rule 16-903(b) provides that court records are "presumed to be open to the public for inspection," which implies that the court records are the court's property and that no party possesses or controls them.

Pepersack, 47 F.3d 120, 122–23 (4th Cir. 1995). To state a substantive due process claim, in addition to pleading a property or liberty interest, Bly must also plead that the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cty of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). As stated above, Bly has identified no property right, and neither his life nor his liberty is at issue. Bly's allegations also do not shock the conscience. Thus, the Court concludes that Bly fails to state a substantive due process claim.

Because Bly fails to state either a procedural or substantive due process claim, the Court will grant Defendants' Motion as to these claims.[5]

## ii.     First Amendment and Article 40

Bly makes several First Amendment claims.[6] The Court will address them in turn.

_____

[5] For the same reasons, the Court also concludes that Bly's claim under Article 24 of the Maryland Declaration of Rights must be dismissed. Generally, "Article 24 due process claims are read in pari materia with Fourteenth Amendment due process claims, except in limited circumstances when Article 24 may be interpreted more broadly." Ross v. Cecil Cty. Dep't of Soc. Servs., 878 F.Supp.2d 606, 622 (D.Md. 2012) (citing Koshko v. Haining, 921 A.2d 171, 194 n.22 (Md. 2007)). Those limited circumstances have included "placing stricter limits on prosecutorial discretion to enter nolle prosequi" and granting a broader right to counsel and a greater protection from self-incrimination. Koshko, 921 A.2d at 194 n.22. The main issue in Bly's case, access to judicial records, is not of the type that the Court of Appeals of Maryland has concluded warrants a broader application of Article 24. See id.; Dua v. Comcast Cable of Maryland, Inc., 805 A.2d 1061, 1071 (Md. 2002).

[6] To the extent Bly asserts claims on behalf of the news media or the general public, he does not have standing to bring them. Standing concerns the threshold question of the court's subject-matter jurisdiction. CGM, LLC v. BellSouth Telecomm., Inc., 664 F.3d 46, 52 (4th Cir. 2011). As this Court has explained, standing "has both constitutional and prudential components." Bell v. Clarke, No. TDC-15-1621, 2016 WL 1045959, at *2 (D.Md. Mar. 16, 2016) (quoting Bishop v. Bartlett, 575 F.3d 419, 423 (4th Cir. 2009)). For prudential standing, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

### aa.    Speech, Petitioning, and Association

Bly alleges Defendants' "deprivation of and interference with access to the judicial records violates [his] rights of free expression, petitioning, [and] association." (Am. Compl. at 3). But Bly does not state facts in his Amended Complaint that support the claim that Defendants infringed on his right to speak freely, petition the government for the redress of grievances, or associate with anyone he chooses. <u>See</u> U.S. Const. amend. I. To the contrary, based on his stated history of picketing, running for office, and speaking with the press, (<u>see</u> Am. Compl. ¶¶ 17–20, 27), Bly has vigorously exercised those First Amendment rights. The Court, therefore, concludes that Bly has not stated a claim against Defendants for a violation of these particular First Amendment rights. Accordingly, the Court will grant Defendants' Motion with respect to Bly's free speech, petitioning, and association claims.

### bb.    Access to Judicial Records

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." <u>Doe v. Pub. Citizen</u>, 749 F.3d 246, 265 (4th Cir. 2014) (collecting cases). The First Amendment "secures a right of access 'only to particular judicial records and documents.'" <u>Id.</u> at 266 (quoting <u>Stone v. Univ. of Md.</u>, 855 F.2d 178, 180 (4th Cir. 1988)). But in those instances, "access may be restricted only if closure is 'necessitated by a compelling

---

parties." <u>Id.</u> (quoting <u>Bishop</u>, 575 F.3d at 423). Bly brings claims on behalf of people he believes would be interested in his case but who are not plaintiffs in this case. Because Bly does not have standing to bring claims on behalf of the news media or general public, the Court is without the power to hear them and will dismiss those claims.

government interest' and the denial of access is 'narrowly tailored to serve that interest.'" Id. (quoting In re Wash. Post Co., 807 F.2d 383, 390 (4th Cir. 1986)). The right of public access "may be abrogated only in unusual circumstances." Id. (quoting Stone, 855 F.2d at 182). Federal appellate courts have repeatedly noted, in various articulations, that public access to judicial records allows the public to better understand, monitor, and trust the courts. Id. (citing Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000)).

Among the "particular judicial records and documents" to which the First Amendment secures access are those filed in connection with plea and sentencing hearings in criminal cases. In re Wash. Post Co., 807 F.2d at 390 (reasoning that the First Amendment right of access that applies to certain judicial proceedings should extend to the records connected to those proceedings). Courts must also properly tailor sealing orders in criminal cases to comport with the public's First Amendment right to access these records. Doe, 749 F.3d at 268 (citing In re State-Record Co., 917 F.2d 124, 129 (4th Cir. 1990) (per curiam)). Further, "[t]he burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004) (citing Press-Enter. v. Superior Court, 478 U.S. 1, 15 (1986)).

Here, Bly alleges that he was convicted of certain crimes approximately thirty years ago; that he moved for and was denied a new trial in December 2015; that, in 2016, he attempted to access his case records at the Circuit Court and at its off-site records

facility but was told that they did not exist; that the same records are not available via the Maryland Judiciary's online docket;[7] and that he never received any notice that his records might be sealed. He alleges that Judge Gelfman or Clerk Robey authorized one or more of Doe Defendants to remove the records or acquiesced in that action. Because the Court must construe Bly's Amended Complaint liberally, and at this stage, accept the truth of its facts, Erickson, 551 U.S. at 94, the Court concludes that he plausibly alleges that Defendants have denied him access to his entire criminal case record, at least some portion of which he has a First Amendment right to access. See Doe, 749 F.3d at 264–69; In re Wash. Post Co., 807 F.2d at 390; In re State–Record Co., 917 F.2d at 129. The burden rests on Defendants to explain why Bly cannot access his records.[8] See Va. Dep't of State Police, 386 F.3d at 575. Accordingly, the Court will deny Defendants' Motion with respect to Bly's First Amendment access to judicial records claim.[9]

---

[7] In considering a motion under Rule 12(b)(6), as here, the Court "may properly take judicial notice of matters of public record." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir.2009). The Court, therefore, takes judicial notice of the fact that Bly's only criminal record on the Maryland Judiciary Case Search pertains to a case in the District Court for Howard County, No. 00605361T1, from 1986. See Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (search by entering "Bly" and "Raymond" in the name fields and by clicking the "Criminal" case type button). The Court also notes the alert below Bly's single listed case: "CaseSearch will only display results for cases that exist and for which the case's existence or a person's identity is not protected information under the Maryland Rules on Access to Court Records."

[8] It is possible, of course, that the Circuit Court sealed Bly's records after considering the minor victim's interests, or that Bly was denied access for some other legitimate reason. See, e.g., Md. Rule 16-907(e) (requiring the custodian of records to deny inspection of "a record created or maintained by an agency concerning child abuse or neglect that is required by statute to be kept confidential").

[9] For the same reasons, the Court concludes that Bly states a claim under Article 40 of the Maryland Declaration of Rights. Article 40 free speech claims are typically read

### cc.     Retaliation

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 499 (4th Cir. 2005) (quoting <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676, 685 (4th Cir. 2000). A plaintiff seeking to recover for First Amendment retaliation must allege that: (1) he engaged in protected First Amendment activity; (2) the defendants took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between his protected activity and the defendants' conduct. <u>Id.</u> (citing <u>Suarez Corp. Indus.</u>, 202 F.3d at 686).

Here, Bly does not plead sufficient facts to establish each element of his claim such that the Court can infer that Defendants are liable for retaliation. Specifically, Bly has not alleged any facts that indicate his picketing caused Defendants to withhold his case records. Bly alleges that he had been picketing for "several years" before he learned he could not access his criminal case records. (Am. Compl. ¶ 18). It follows, then, that either Bly was not attempting to access his criminal case records for years, in which case his First Amendment rights were not adversely affected, or that an unspecified Defendant saw him picketing and then waited for years to retaliate against him by removing his court records, which is implausible. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678; <u>Goss</u>, 917 F.Supp.2d at

---

in pari materia with their corollary First Amendment claims. <u>See</u> <u>Dua</u>, 805 A.2d at 1071–72. Because Bly states a claim under the First Amendment for access to court records, he also states a claim under Article 40.

449. Thus, the Court concludes that Bly fails to plausibly allege a First Amendment retaliation claim. Accordingly, the Court will grant Defendants' Motion as to this claim.

### b. Immunities

#### i. Qualified Immunity

Judge Gelfman and Clerk Robey argue that they are entitled to qualified immunity from Bly's claims. The Court concludes that it cannot yet make this determination.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014). Qualified immunity protects government officials when they have made "mere mistakes in judgment, whether the mistake is one of fact or one of law." Butz v. Economou, 438 U.S. 478, 507 (1978). As "an immunity from suit rather than a mere defense to liability, . . . [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis removed). Accordingly, qualified immunity questions should be resolved on summary judgment or earlier in the litigation when possible. See Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987).

There is a two-prong test to determine if a government official is protected by qualified immunity: (1) whether the facts that the plaintiff has alleged or shown "make out a violation of a constitutional right"; and (2) whether that right was "clearly

established" at the time of the purported violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Courts have discretion to resolve these two prongs in whichever order they deem appropriate, based on the circumstances of the case. Id. at 236. The answers to both prongs must be in the affirmative for a plaintiff to prevail. Batten v. Gomez, 324 F.3d 288, 293–94 (4th Cir. 2003). Once the defendant raises qualified immunity as a defense, the plaintiff bears the burden of proof on the first prong, that is, whether a constitutional violation occurred. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993)). The defendant bears the burden on the second prong, that is, that the right was not clearly established at the time of the violation. Id. at 378 (quoting Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003)).

The second prong involves a three-step analysis. First, the court identifies "the specific constitutional right allegedly violated." Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990). Second, the court inquires whether at the time of the alleged violation, that right was "clearly established." Id. Third, the court assesses "whether a reasonable person in the official's position would have known that his conduct would violate that right." Id.; see Cloaninger ex rel. Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009) (explaining that a right is "clearly established" when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (quoting Saucier, 533 U.S. at 202)).

Therefore, even when a plaintiff proves that an official has violated his rights, the official may nevertheless be entitled to qualified immunity "if a reasonable person in the 'official's position could have failed to appreciate that his conduct would violate' those rights." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (quoting Collinson, 895 F.2d at 998). This allowance for mistakes is "ample"—the qualified immunity standard protects "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343, 341 (1986) (internal quotation marks omitted)). This allowance "exists because 'officials should not err always on the side of caution' because they fear being sued." Id. (quoting Davis v. Scherer, 468 U.S. 183, 196 (1984)).

Here, as discussed above, the facts in the Amended Complaint make out a violation of a constitutional right, namely Bly's First Amendment right of access to court records. Based on controlling Fourth Circuit precedent, that right was clearly established at the time of the purported violation. See Doe, 749 F.3d at 264–69. The Court is unable to make a determination regarding qualified immunity, however, because without discovery concerning what actions Judge Gelfman and Clerk Robey took with regard to Bly's records, it is not clear that Bly's First Amendment right to access judicial records was, in fact, violated. Accordingly, the Court will deny Defendants' Motion without prejudice on the question of qualified immunity.

## ii. Absolute Judicial Immunity

The Court is similarly unable to determine at this stage of the case whether Judge Gelfman or Clerk Robey are entitled to absolute judicial immunity.

The Court of Appeals of Maryland has held "the appropriate test for determining whether an individual is entitled to receive the benefit of absolute judicial immunity for certain functions is whether: (1) the act performed was by a judicial officer; and (2) the act was a judicial act." D'Aoust v. Diamond, 36 A.3d 941, 969 (Md. 2012). With regard to the first prong, the "critical determination" is "whether the individual is exercising judgment similar to that of a judge." Id. (first citing Gill v. Ripley, 724 A.2d 88, 92 (Md. 1999); and then citing McCray v. State, 456 F.2d 1, 4 (4th Cir. 1972)). Here, Judge Gelfman clearly qualifies as a judicial officer. Whether Clerk Robey is also a judicial officer depends on the actions, if any, he took in this case and whether he was exercising judgment similar to a judge in performing them. The nature of Clerk Robey's actions also informs the second prong of the analysis.

With respect to the second prong, "[a] judge loses [her] absolute immunity only when [she] knowingly acts in the 'clear absence of all jurisdiction' over the matter, or when the act performed was not a judicial act." Id. at 970 (first citing Parker v. State, 337 653 A.2d 436, 441 (Md. 1995); and then citing Mandel v. O'Hara, 576 A.2d 766, 768 (Md. 1990)). Whether a judge's action is judicial depends on "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and . . . the expectations of the parties, i.e., whether they dealt with the judge in [her] judicial

capacity." Id. (quoting Parker, 653 A.2d at 445). The issuance of a warrant, for example, has been considered a judicial act deserving of judicial immunity, whereas the demotion and discharge of court personnel is treated as an administrative act not deserving of judicial immunity. Id. (first citing Parker, 653 A.2d at 444; and then citing Forrester v. White, 484 U.S. 219, 229 (1988)). As for court clerks, some federal appellate courts have granted them judicial immunity "in connection with discretionary, as opposed to ministerial, acts, or when the act is required by court order or taken at a judge's direction." Gill, 724 A.2d at 96 (collecting cases). Others have considered whether the court clerk's conduct was "an integral part of the judicial process." Id. (collecting cases). The Fourth Circuit adopted the latter approach in granting judicial immunity to a federal district judge's law clerk. See Jackson v. Houck, 181 F.App'x 372, 373 (4th Cir. 2006).

Here, Bly does not allege that Judge Gelfman presided over any of his cases. Instead, his claims against both Judge Gelfman and Clerk Robey concern directions they allegedly gave to Circuit Court employees regarding Bly's files. Bly "assumes" that "authorization for – or acquiescence to – removal from the internet of the record of the aforesaid criminal proceeding against [Bly] and his subsequent efforts to overturn his wrongful conviction could have come only from one or more of the Defendants named herein," that is, Judge Gelfman or Clerk Robey. (Am. Compl. at 7). If Bly's case files were sealed by Court order, Judge Gelfman and Clerk Robey would likely be entitled to absolute judicial immunity. But if the case files were kept from Bly for some other reason, as Bly alleges in his Amended Complaint, then the involved Defendants may not

be entitled to absolute judicial immunity. Because the context and specifics of Judge Gelfman's and Clerk Robey's actions, if any, are not yet clear, the Court will deny Defendants' Motion without prejudice with respect to absolute judicial immunity.

### iii.     Eleventh Amendment Immunity

#### aa.     Circuit Court

Under the Eleventh Amendment, a state and its agencies are immune from suits for damages brought in federal court by individual citizens unless the state consents. Dixon v. Balt. City Police Dep't, 345 F.Supp.2d 512, 513 (D.Md. 2003) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)), aff'd, 88 F.App'x 610 (4th Cir. 2004). The State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. Code Ann., State Gov't, §§ 12–101 et seq. (West 2019), but it has not waived its immunity under the Eleventh Amendment to suit in federal court, Dixon, 345 F.Supp.2d at 513. Maryland state courts, like the Circuit Court, are, therefore, immune from suit. See Coleman v. Court of Appeals of Md., 566 U.S. 30, 35 (2012) (affirming district court, which ruled that that Maryland Court of Appeals is an entity or instrumentality of the State for purposes of sovereign immunity, on other grounds); Alexander v. Dist. Court of Md. for Charles Cty., No. DKC 2007-1647, 2008 WL 6124449, at *7 (D.Md. Mar. 20, 2008). Accordingly, the Court will grant Defendants' Motion to the extent it seeks dismissal of Bly's claims against the Circuit Court.

### bb.    Individual Defendants

Bly sues the individual Defendants in both their individual and official capacities. A suit may be maintained against state officials acting in their official capacities only to the extent that it seeks injunctive or declaratory relief. Ex Parte Young, 209 U.S. 123 (1908) (holding that the Eleventh Amendment allows prospective relief against a state official to prevent future constitutional or statutory violations). State officials acting in their official capacities are outside the class of "persons" who can be sued for damages under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). State officials may, however, be sued for damages in their individual capacities. Hafer v. Melo, 502 U.S. 21, 23 (1991). Thus, the Court concludes that the individual Defendants are entitled to Eleventh Amendment immunity only for Bly's claims seeking money damages from them in their official capacity. Accordingly, Bly may only pursue declaratory and injunctive relief against the individual Defendants in their official capacities and money damages in their individual capacities.

### III.    CONCLUSION

For the foregoing reasons, the Court will deny Bly's Motion for Leave to Proceed in Forma Pauperis (ECF No. 6) and Bly's Motion to Amend My Complaint and Request Return Papers of Defendants (ECF No. 14). The Court will grant in part and deny in part Defendants' Motion to Dismiss (ECF No. 7). The Court will grant the Motion to the extent it seeks dismissal of claims against the Circuit Court and to the extent it seeks dismissal of all but Bly's First Amendment access to court records claim. The Court will

21

deny the Motion to the extent it seeks dismissal of Bly's First Amendment access to judicial records claim. A separate Order follows.

Entered this 26th day of June, 2019.

/s/
_____
George L. Russell, III
United States District Judge